619 S.E.2d 220

**In re ALYSSA W. & Sierra H.**

No. 32520.

Supreme Court of Appeals of
West Virginia.

Submitted June 7, 2005.

Decided July 6, 2005.

Concurring and Dissenting Opinion of Chief
Justice Albright July 7, 2005.

Frank Cody Pancake, III, Keyser, for Mildred H.

David H. Webb, Law Office of David H. Webb, Keyser, for Robert H.

Lynn A. Nelson, Mineral County Prosecuting Attorney, Keyser, for WV DH & HR.

Jeffrey R. Roth, Petersburg, Guardian ad Litem for Alyssa W.

Amanda H. See, See & See, Attorneys at Law, Moorefield, Guardian ad Litem for Sierra H.

PER CURIAM:

In this case, Appellant Mildred H.[1] appeals the September 1, 2004, order of the Mineral County Circuit Court that granted a resumption of post-termination visitation of her child, Sierra H., with Sierra H.'s father, Appellee Robert H. For the reasons that follow, we reverse.

---

1. We follow our practice in cases involving sensitive matters of using initials to identify the parties rather than their full names. *Matter of Jona-*

## I.

### FACTS

On December 15, 2000, the Department of Health and Human Resources (hereafter "DHHR") received information that Appellee Robert H. had sexually molested Alyssa W., who is the stepdaughter of Robert H. and the daughter of Appellant Mildred H. Alyssa W. is also the half-sister of Sierra H., who is the daughter of both Mildred H. and Robert H. At the time the abuse allegations came to light, Alyssa W. was nine years old and Sierra H. was about a year and two months old. The DHHR case worker who investigated the abuse allegations gave the following testimony in which she related her conversation with Alyssa concerning the alleged abuse:

> She told me that her stepfather, Bob, had pulled his pants down, laid [sic] on the couch and told her to sit on his legs. While she was sitting on his legs, he told her to put her hands on his penis, then told her to put her mouth on his penis. She stated that he also put his hands on his penis. She stated that his penis had hair around it. She described in detail what she had seen. She stated that something white had squirted out of his penis into her mouth and also got onto her hands. She stated that, I asked her what happened next and she said I went into the kitchen, and I asked her why she went to the kitchen, and she, she got tears in her eyes, tears welled up in her eyes, and she said to wash that stuff off of my hands. And, she said that it happened on Saturdays while her mother was working.

Also, according to the case worker, Alyssa W. told her that Robert H. had threatened to kill her if she told anyone. Further, Alyssa W. indicated that these instances of sexual abuse had occurred on at least two occasions.

Mildred H. initially did not believe these allegations and, as a result, the DHHR removed both Alyssa W. and Sierra H. from her home. Shortly thereafter, however, Mildred H. moved out of the home she shared

*than P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

with Robert H. She also received counseling and attended parenting classes as part of an improvement plan. Consequently, both Alyssa W. and Sierra H. were returned to Mildred H.

The circuit court found by clear and convincing evidence that Robert H. sexually assaulted Alyssa W. Because Sierra H. lived in the same household as Alyssa W.,[2] and after finding that it was in Sierra H.'s best interests, the circuit court terminated Robert H.'s parental rights to Sierra H. by order of May 21, 2002. Subsequently, by order of July 19, 2002, the circuit court ordered that Robert H. would have post-termination supervised visitation with Sierra H. for three hours on three Saturdays a month.[3]

In 2001, Robert H. had been charged with one count of first degree sexual assault, one count of first degree sexual abuse, and two counts of sexual abuse by a custodian resulting from his abuse of Alyssa. W. On March 26, 2003, he entered a plea of guilty to six counts of third degree sexual abuse and was sentenced to 90 days incarceration on each of the six counts to be served consecutively. He·was incarcerated from August 4, 2003, to June 15, 2004. His last visitation with Sierra H. was just prior to his date of incarceration.

Following Robert H.'s release from incarceration, he moved for reinstatement of his visitation with Sierra H. which was opposed by Mildred H. After two hearings on the matter, the circuit court, by order of September 1, 2004, granted Robert H.'s motion for resumption of visitation with the visits to take place on the first and third Sundays of each month from 3:00 p.m. until 6:00 p.m.,

beginning on September 12, 2004. In its order, the circuit court held that Mildred H. had the burden of proof to show why visits between Sierra H. and Robert H. should not resume as previously ordered. In support of its decision to resume visitation, the circuit court found in part:

(a) Visits between [Sierra H.] and Robert [H.] are in the best interests of [Sierra H.] This was shown from evidence that [Sierra H.] had always been excited about seeing her father, Robert [H.], for past visitation, so much so that [Sierra H.] would sometimes cry when she had to leave him or when she thought visitation was going to be cancelled or postponed. Evidence was also presented that during those visits [Sierra H.] and Robert [H.] played and interacted appropriately, got along well, and seemed to enjoy themselves. [Sierra H.] never showed any signs of being afraid of Robert [H.]

(b) There was only a weak showing that visits between [Sierra H.] and Robert [H.] would be harmful to [Alyssa W.], considering that no one had spoken to [Alyssa W.] in the last year about her feelings concerning [Sierra H.] visiting with Robert [H.] Secondly, [Alyssa W.'s] past emotional and behavioral issues were not caused simply due to the continued interaction between [Sierra H.] and Robert [H.] Additionally, there was evidence that any fear that [Alyssa W.] had about [Sierra H.] visiting Robert [H.] could be alleviated by full disclosure of the visitation, trust-building between [Alyssa W.] and the supervisor of visitation, and further counseling.

---

**2.** According to W.Va.Code § 49–1–3 (1999),

> (a) "Abused child" means a child whose health or welfare is harmed or threatened by: (1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child *or another child in the home;* or (2) Sexual abuse or sexual exploitation[.] (Emphasis added).

In Syllabus Point 2 of *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court held:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her

parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va. Code, 49–1–3(a) (1994). ·

**3.** The circuit court's order notes that Mildred H. would agree to one visit each month on Friday for two hours, but contended that each weekend was too frequent. At a May 29, 2002 hearing, counsel for Mildred H. indicated to the circuit court that his client "reluctantly agreed" to visitation one time per month for two hours, but that Robert H.'s pending criminal trial was a factor that should be considered on the issue of visitation.

Mildred H. appealed the circuit court's order. On September 9, 2004, this Court stayed visitation between Robert H. and Sierra H. pending resolution of this appeal.

## II.

## STANDARD OF REVIEW

Concerning our standard of review in abuse and neglect cases, in Syllabus 1 of *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

## III.

## DISCUSSION

■ To begin with, we find that the circuit court erred as a matter of law when it placed the burden on Mildred H. to show why visits between Sierra H. and Robert H. should not resume upon Robert H.'s release from incarceration. In the United States Supreme Court case of *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Court held that a Washington state statute providing that any person could petition for visitation at any time, allowing the court to order visitation rights for any person when visitation served the best interests of the child, violated the substantive due process rights of the child's mother. The Court ex-

plained, "[t]he problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." 530 U.S. at 69, 120 S.Ct. at 2062. This Court recently explained *Troxel* as follows:

Thus, *Troxel* instructs that a judicial determination regarding whether grandparent visitation rights are appropriate may not be premised solely on the best interests of the child analysis. It must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis.

*In re Grandparent Visitation of Cathy L. v. Brent R.*, 617 S.E.2d 866, 874–75 (2005). When we apply the legal principle in *Troxel* to the instant facts, we find that not only did the circuit court fail to give special weight to the determination of Mildred H., the fit parent herein, regarding Sierra H.'s best interests, but it also improperly placed the burden on her to disprove that Robert H.'s visitation with Sierra H. is not in Sierra H.'s best interests.

In support of her determination that continued post-termination visitation of Robert H. with Sierra H. is not in Sierra H.'s best interests, Mildred H. avers that continued visitation would negatively impact Sierra H.'s relationship with her half-sister Alyssa W., the victim of Robert H.'s sexual abuse. In addition, Mildred H. asserts that continued visitation will unreasonably interfere with Sierra H. and Alyssa W.'s permanent placement with her. Finally, Mildred H. argues that a strong emotional bond has not been established between Sierra H. and Robert H. due to Sierra's age and the fact that she has not seen Robert H. for more than a year.

■ We agree with Mildred H. Concerning post-termination visitation, this Court held in Syllabus Point 5 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995) that,

When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other

contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

This Court's holding in *Christina L.* is a simple recognition that "even where termination of parental rights is justified, a continued relationship between parent and child by means of post-termination visitation may be valuable to the child's emotional well-being." *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996) (citation omitted). To that end, it should be emphasized that post-termination visitation "could be ordered not as a right of the parent, but rather as a right of the child." *In re Christina L.*, 194 W.Va. at 455 n. 9, 460 S.E.2d at 701 n. 9 (citations omitted). Specifically, "[i]t is the right of the child to continued association with those with whom he shares an emotional bond which governs the decision." *In re Billy Joe M.*, 206 W.Va. 1, 5 n. 10, 521 S.E.2d 173, 177 n. 10 (1999). Finally, this Court has stated that post-termination visitation should be allowed if it is in the children's best interest and "would not unreasonably interfere with their permanent placement." *State ex rel. Amy M.*, 196 W.Va. at 260, 470 S.E.2d at 214.

Regarding the issue of whether Sierra H. has established a strong emotional bond with Robert H., we are left with the definite and firm conviction that the circuit court committed error. The circuit court merely found, as set forth above, that,

[Sierra H.] had always been excited about seeing her father, Robert [H.], for past visitation, so much so that [Sierra H.] would sometimes cry when she had to leave him or when she thought visitation was going to be cancelled or postponed. Evidence was also presented that during those visits [Sierra H.] and Robert [H.] played and interacted appropriately, got along well, and seemed to enjoy themselves. [Sierra H.] never showed any signs of being afraid of Robert [H.]

We believe that the evidence relied upon by the circuit court is inadequate to establish that Sierra H. developed a close emotional bond with Robert. H.[4] Frankly, the fact that Sierra was only fourteen months old when the instant proceedings commenced below and the fact that her subsequent contact with Robert H. was limited to regular visits are alone sufficient to cast serious doubt on the notion that Sierra H. developed the enduring and emotionally intimate relationship with Robert H. inherent in the phrase "close emotional bond."

Our cases indicate that a close emotional bond generally takes several years to develop. Thus, the possibility of post-termination visitation is usually considered in cases involving children significantly older than Sierra H. For example, in *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), this Court found that the circuit court was required to determine whether post-termination visitation should be granted where the child was five years of age. In *In the Matter of Elizabeth A.D. v. Hammack*, 201 W.Va. 158, 494 S.E.2d 925 (1997), this Court determined that the circuit court's denial of post-termination visitation was clearly erroneous in light of evidence of a close emotional bond between a 13–year–old child and her mother. Finally, in *In re Billy Joe M., supra*, we found that remand was proper for an additional evaluation regarding the potential for post-termi-

**4.** Sierra H.'s guardian ad litem, who recommends continued visitation, although reduced from that ordered by the circuit court, opines in her brief to this Court:

After visits three times per month from May 31, 2002 until August 4, 2003, certainly one can surmise that a bond had already formed by the time Robert H. was incarcerated, if it hadn't already, keeping in mind that Robert H. lived with Sierra H. from her birth until she was removed from the home at fourteen months of age. Although there is no evidence submitted by the service providers, common sense would tell you that children form bonds with their parents from birth. Robert H. had consistent contact with Sierra from birth until he was incarcerated.

Such speculation simply does not support a resumption of post-termination visitation under the facts of this case.

nation visitation where one child was 12 and the other was 10 years of age at the time the neglect and abuse petition was filed.

■ Also, as set forth above, before ordering post-termination visitation, a circuit court should consider whether such visitation would unreasonably interfere with the child's permanent placement. It is apparent to this Court that continued visitation would unreasonably interfere with the household in which both Sierra H. and Alyssa W. reside with their mother. According to Alyssa W.'s guardian ad litem, she has indicated that she does not believe that Robert H. should have any further contact with her half-sister, Sierra H.[5] This is certainly understandable. Frankly, it is difficult for this Court to imagine that Sierra H.'s continued visitation with Robert H., the man who sexually abused Alyssa W., would not cause considerable and unreasonable stress and be disruptive to the sibling relationship shared by Sierra H. and Alyssa W. Obviously, such stress and disruption would negatively impact the entire household to the detriment of both Sierra H. and Alyssa W.

## IV.

## CONCLUSION

Therefore, based on our discussion above, this Court finds that there is an insufficient showing of a close emotional bond established between Sierra H. and Robert H. to support the resumption of post-termination visitation. Also, giving special weight to the determination of Mildred H., the fit parent herein, regarding Sierra H.'s best interests, and considering the unreasonable interference continued visitation is likely to have on Sierra H.'s permanent placement, we conclude that continued post-termination visitation is not appropriate in this case. Accordingly, we reverse the September 1, 2004, order of the Circuit Court of Mineral County that directed the resumption of post-termination visitation of Robert H. with Sierra H.

Reversed.

5. Alyssa W.'s guardian ad litem has recommended that visitation between Sierra H. and Robert H. not be continued.

Justice BENJAMIN concurs.

Chief Justice ALBRIGHT dissents and files a dissenting opinion.

ALBRIGHT, Chief Justice, concurring in part and dissenting in part:

(Filed July 7, 2005)

I concur with the majority's conclusion that the trial court abused its discretion by placing the burden upon Mildred H. to demonstrate why visitation should not be resumed between the Robert H. and Sierra H. There is no basis upon which the trial court may impose such a burden. It was improper.

I dissent, however, to the extent that this Court has substituted its own judgment for that of the trial court on the issue of the best interests of the child. The trial court engaged in substantial investigation of the best interests of Sierra regarding potential *supervised* visitation with her father. The trial court sought to assure that the safety of the child would be protected by ordering that the visitation be supervised.[1] This Court has consistently cautioned that substantial discretion must be vested in trial courts and that this Court should not merely substitute its own judgment for that of the trial court in such discretionary matters. That is the essence of the abuse of discretion standard, a model given lip service by the majority but then hastily cast aside when the majority chose an opposite conclusion. Whether in the context of this case or the myriad of others confronted by this Court, this Court's variable application of the abuse of discretion standard is paralyzing that standard's effectiveness. As Justice Cleckley once observed, "the abuse of discretion standard has many faces and, in our application of the standard, it can range anywhere from careful scrutiny to almost no scrutiny." *State v. Head,* 198 W.Va. 298, 305, 480 S.E.2d 507, 514 (1996) (Cleckley, J., concurring).

The question is not what this Court would have done if sitting on the trial court bench.

1. I note with disdain that the DHHR originally permitted Robert H.'s former girlfriend to serve as the supervisor of visitation. There is absolutely no justification for such a decision.

The question is whether the trial court abused its discretion in the action it took. *See Bartles v. Hinkle*, 196 W.Va. 381, 389–90, 472 S.E.2d 827, 835–36 (1996) ("the question is not whether we would have imposed a more lenient penalty had we been the trial court, but whether the trial court abused its discretion in imposing the sanction"). In *Gribben v. Kirk*, 195 W.Va. 488, 466 S.E.2d 147 (1995), this Court explained the abuse of discretion standard as follows: "Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances." 195 W.Va. at 500, 466 S.E.2d at 159; *see also Gentry v. Mangum*, 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995) ("In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them").

Aside from the initial use of a former girlfriend to supervise visitation, nothing in the record suggests that the trial court made a clear error of judgment in allowing such supervised visitation or that the trial court exceeded permissible choices, ignored a material factor, relied upon an improper one, or made a serious mistake in weighing the proper factors.

Accordingly, I dissent from the judgment of this Court depriving the trial judge of his discretion without cause.