# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.B., S.B., D.G. & W.G.**

**No. 15-0207** (Morgan County 14-JA-33, 14-JA-34, 12-JA-20, & 12-JA-21)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.W., by counsel Michael Donadieu, appeals the Circuit Court of Morgan County's January 29, 2015, order terminating his parental rights to D.G. and W.G. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Angela Walters, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Nicholas Forrest Colvin, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in determining that the DHHR was not obligated to make reasonable efforts to achieve permanency, in denying petitioner's motion for an improvement period, in denying post-termination visitation, and in terminating his parental rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has two adopted children, D.G. and W.G. In November of 2013, petitioner began a relationship with H.W. and the two were married on January 6, 2014. After their marriage, petitioner resided with H.W. and his two children, D.G. and W.G. H.W. also had two children, D.B. and S.B.[2], who did not reside in the home. In May of 2014, petitioner and H.W. got into an argument over her abuse of Klonopin and her attempt to overdose on Klonopin after a disagreement she had with her ex-husband. Petitioner and H.W. continued to argue until the disagreement escalated to domestic violence, and H.W. punched and scratched petitioner and cut him with a knife. D.G. and W.G. were witnesses to the domestic violence incident. After being

---

[1] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2] Although they were included in the petition below, petitioner makes no assignment of error regarding D.B. or S.B. on appeal. As such, those children are not the subject of this appeal.

cut, petitioner left his home ran to the local fire station for help, while H.W. continued to behave in an erratic manner in front of her step-children. Both petitioner and H.W. were arrested. H.W. became combative with the police officers arresting her. She was tased after throwing herself on the floor and kicking at the officers. The DHHR took emergency custody of D.G. and W.G. and filed an abuse and neglect petition alleging that the children were abused and neglected by their exposure to domestic violence. The petition contained additional allegations concerning H.W.'s arrest, her instability, and her threats of suicide by overdose.[3] In May of 2014, the circuit court held a preliminary hearing. The circuit court adopted an emergency protective order previously issued by the Morgan County Magistrate Court in place to protect D.G. and W.G. from H.W. [4]

In November of 2014, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations of abuse and neglect and admitted that he failed to appreciate the danger that H.W.'s unstable mental health history and substance addiction presented to his children's safety and that he had exposed them to risks of emotional and physical injury by allowing contact between them and H.W. Petitioner and H.W. were adjudicated as abusive parents. Petitioner filed a motion for a post-adjudicatory improvement period. The circuit court denied petitioner's motion and found that petitioner would not separate himself from H.W. or adhere to court orders. The circuit court explained that petitioner immediately violated its no-contact order and that he asserted ignorance as to the extent of the order. Petitioner was notified again by the circuit court of the no-contact provision. The circuit court found that petitioner violated the same by permitting contact between the children and H.W. while she was incarcerated.

In January of 2015, the circuit court held a dispositional hearing and, after reviewing the evidence, terminated petitioner's parental rights to D.G. and W.G. The circuit court denied petitioner's request for a dispositional improvement period and denied any post-termination visitation. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

---

[3]H.W. was the subject of two previous abuse and neglect petitions. She began abusing drugs in 2005, which perpetuated the first petition's filing. She went to a drug rehabilitation program in 2005. H.W. relapsed and began abusing alcohol and drugs again in 2007 and relapsed several times between 2005 and 2010. She was involved in an abusive relationship in 2008 and exposed her biological children to domestic violence. H.W. physically abused one of her biological children in 2012, leading to the filing of the second petition. While that case was ongoing, H.W. continued to abuse substances, failed to manage her mental illness, and engaged in domestic violence with petitioner which led to a third.

[4]Thereafter, the petition was amended to include allegations against petitioner for dismissing the protective order against H.W. after its adoption by the circuit court, and for allowing H.W. to have contact with D.G. and W.G. despite the circuit court's adoption of the no-contact order. The petition was amended a second time to include additional allegations that petitioner and  H.W. disregarded the circuit court's no-contact order again and jointly planned, held, and attended a birthday party for D.G. and W.G.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). On appeal, petitioner argues that the DHHR pursued only one course of action and that was to break up his family. We disagree. Upon our review, we find that the circuit court correctly found that the DHHR was not obligated to make reasonable efforts to achieve permanency.

To begin, West Virginia Code § 49-6-1(c) requires that "[a]t the time of the institution of any proceeding under this article, the department shall provide supportive services in an effort to remedy circumstances detrimental to a child." Following the children's removal from petitioner's home, they were returned to him with the condition that he prevent any contact between the children and H.W. However, petitioner repeatedly exposed his children to H.W. in violation of the circuit court's protective order. Further, petitioner refused to participate in any DHHR service plans that involved himself and the children without H.W. Ultimately, the circuit court considered the nine years of services offered to H.W.[5] and petitioner's refusal to adhere to the circuit court's order to protect the children from H.W. when finding that the DHHR made reasonable efforts to achieve permanency and in determining that reunification with petitioner was not appropriate for permanency. Therefore, we find that the circuit court did not err in its reasonable efforts finding.

Next, the Court finds no error in the circuit court's denial of petitioner's motions for both post-adjudicatory and dispositional improvement periods. West Virginia Code § 49-6-12 permits the circuit court to grant improvement periods when the parent has demonstrated by "clear and convincing" evidence that he is likely to fully participate in the improvement period. Petitioner argues that the circuit court erred when it denied his requests for improvement periods because he demonstrated that he would diligently participate in any services that would reunite H.W. with his family. Petitioner's argument on this issue minimizes his continued violations of the circuit court's protective order and his facilitation of contact between the children and H.W. As the circuit court noted, petitioner would have been a candidate for an improvement period but for his ongoing relationship with H.W., and his flagrant and his continued violations of previous orders

---

[5]At the institution of this proceeding, H.W. was already on an improvement period in another abuse and neglect case and had been receiving services through the DHHR for the proceeding nine years.

in place to protect his children. Petitioner demonstrated that he was unwilling to put his children's interests over his desire to maintain a relationship with H.W. Consequently, we find that the evidence appropriately supported the circuit court's denial of petitioner's requests for both post-adjudicatory and dispositional improvement periods.

Next, the Court finds no error in the circuit court's termination of petitioner's parental rights to D.W. and W.G. While petitioner argues that he did not meet any of the circumstances for termination, we find that the circuit court properly terminated petitioner's parental rights in finding that petitioner could not substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The circuit court specifically made this finding in regard to petitioner, based upon the evidence above related to his non-compliance with the circuit court's orders and his failure to correct the conditions of abuse and neglect created by his children's contact with H.W.

Pursuant to West Virginia Code § 49-6-5(a)(6), for a circuit court to terminate parental rights there must be a finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the welfare of the children. Further, we have held that "[c]ourts are not required to exhaust every speculative possibility of improvement before terminating parental rights." *In re Katie S.*, 198 W.Va. 79, 479, S.E.2d 589 (1996). The circuit court made this finding specifically based on petitioner's refusal to abide by the circuit court's orders put in place to protect the children from H.W., his refusal to participate in any DHHR service plans, and the circuit court's belief that petitioner would not abide by its future orders to protect the children from H.W. Contrary to petitioner's argument that he could not fail to respond to a reasonable family/rehabilitative case plan because no plan was ever in place, the circuit court found that petitioner refused to participate in any service plans that did not include H.W. and her reunification with the family. Therefore, petitioner made it impossible for the DHHR to offer him services in an attempt to remedy the conditions of abuse and neglect.

As noted above, the circuit court specifically found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49–6–5 . . . may be employed without the use of intervening less restrictive

4

alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, termination of his parental rights to both children was not made in error.

Finally, we find no error in the circuit court's denial of post-termination visitation between petitioner and the children. While petitioner contends that he was a critical support for the children and that there was a need for an ongoing relationship, we disagree. Post-termination visitation is a discretionary action and not compulsory upon the circuit court. We have previously held that a circuit court must consider three factors when ordering post-termination visitation: whether there is a close emotional bond between parent and child; the child's wishes; and whether the visitation would be detrimental to the child's best interests. *In re Alyssa W.*, 217 W.Va. 707, 619 S.E.2d 220 (2005). Here, according to the guardian, neither child desired to see petitioner. Further, the guardian noted that D.G. has been in and out of treatment facilities to help his behavioral issues, and W.G. is currently placed in a pre-adoptive home and only mentions petitioner when prompted to do so. The circuit court correctly found that this evidence, coupled with petitioner's unwillingness to protect his children from H.W., rendered post-termination visitation detrimental to the children and not in their best interests. Therefore, we find no error in the circuit court's denial of post-termination visitation between petitioner and the children.

For the foregoing reasons, the circuit court's January 29, 2015, termination order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II