# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.P.**

**No. 18-1145** (Roane County 18-JA-19)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.G., by counsel Erica Brannon Gunn, appeals the Circuit Court of Roane County's December 4, 2018, order terminating his parental rights to A.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order along with a supplemental appendix. The guardian ad litem ("guardian"), Leslie L. Maze, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, an abuse and neglect petition was filed alleging that the mother's substance abuse issues impaired her ability to care for the child. The DHHR alleged that petitioner failed to protect the child from the mother's substance abuse and failed to provide any financial or emotional support to the infant child, whom he had never met. The DHHR also alleged that petitioner's parental rights to five older children were involuntarily terminated in 2016 due to his substance abuse. On April 19, 2018, the circuit court held an adjudicatory hearing which the DHHR moved to continue in order to obtain the results of petitioner's paternity testing. The circuit court granted the motion to continue.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

On June 19, 2018, the circuit court held an adjudicatory hearing and the DHHR presented the results of petitioner's paternity test which demonstrated that he was the biological father of the child. However, petitioner, who was incarcerated, was not transported to the hearing, so the circuit court granted counsel's motion to continue the hearing. On August 18, 2018, petitioner was present for the adjudicatory hearing and stipulated to the allegations of abuse and neglect. He admitted to the termination of his parental rights to his five other children in 2016 and also admitted that the circumstances that led to those terminations had not changed by the time the instant abuse and neglect petition was filed.

On November 1, 2018, the circuit court held a dispositional hearing during which petitioner requested a post-adjudicatory improvement period. The DHHR and the guardian moved for the termination of petitioner's parental rights. Petitioner testified that he was incarcerated since May of 2018 for failure to pay child support and that his home incarceration was previously revoked for failure to drug screen, failure to pay the home incarceration fees, and failure to maintain contact with the home incarceration officer. Petitioner also testified that he planned to complete a substance abuse program while incarcerated and that he was on a waiting list to participate in parenting classes. Further, he acknowledged that his parental rights to five other children were terminated in 2016 due to his substance abuse issues, but that his long-term goals were to find employment and remain sober after his release from incarceration. He admitted that, other than during his incarceration, the longest period of time he had ever been clean from illegal substances was ninety-six days. Next, a Child Protective Services ("CPS") worker testified that she did not believe that petitioner had remedied his substance abuse problem despite his participation in a substance abuse program while incarcerated. She testified that petitioner failed to complete an improvement period in his prior abuse and neglect proceeding and that he was unlikely to do so in the instant matter.

After the presentation of testimony, the circuit court found that petitioner failed to demonstrate that he remedied the circumstances that led to the prior terminations of his parental rights and further found that petitioner's participation in a substance abuse treatment program while incarcerated was not sufficient to show that petitioner remedied his substance abuse issues. Specifically, the circuit court noted that the "revocation [of petitioner's home incarceration] for substance abuse shows that [petitioner] continued abusing controlled substances through 2018, which was the basis for the termination of his parental rights to five other children in 2016." The circuit court further noted that petitioner's eligibility for parole in January of 2019 did not guarantee that he would be released from incarceration and that, due to his incarceration at the time of the dispositional hearing, petitioner was unable to participate in an improvement period. The circuit court found that the only change in petitioner's circumstances since his prior terminations was his incarceration. Ultimately, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and also found that because petitioner had never seen the child and had no bond with her, it was in the child's best interest to terminate petitioner's parental rights. The circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated his parental rights in its December 4, 2018, dispositional order.[2] It is from this order that petitioner appeals.

---

[2]The mother successfully completed an improvement period and the child was returned to her custody. The abuse and neglect petition against the mother was dismissed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

In his first assignment of error, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support, petitioner asserts that there was "insufficient evidence before the [circuit court] that the granting of an improvement period would in any [way] jeopardize the best interest of the child." However, petitioner fails to acknowledge the applicable burden that he was required to meet in order to receive an improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have held that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

While petitioner testified that he was participating in a substance abuse treatment program while he was incarcerated, the record shows that petitioner abused substances until he was incarcerated. The record also shows that petitioner violated the terms of his home incarceration due to his failure to drug screen, pay fees, and maintain contact with the home incarceration officer. Further, petitioner was unable to participate in an improvement period during the proceedings due to his incarceration. Therefore, petitioner did not prove by clear and convincing evidence that he would fully participate in an improvement period. Accordingly, the circuit court did not err in denying petitioner's motion for such.

Petitioner also argues that the circuit court erred in terminating his parental rights because he "worked to remedy his drug problem upon which [the prior] terminations were based by participating in [a substance abuse treatment] program" and because he "took the step to enroll in parenting classes." We do not find this argument persuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-

604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

*Id*. Additionally, West Virginia Code § 49-4-604(b)(7)(C) provides that, for purposes of the circuit court's consideration of the disposition custody of a child, the DHHR is not required to make reasonable efforts to preserve the family when "the parental rights of the parent to another child have been terminated involuntarily."

According to the record, petitioner's parental rights to five children were terminated in 2016. The circuit court noted in its dispositional order that the "revocation [of petitioner's home incarceration] for substance abuse shows that [petitioner] continued abusing controlled substances through 2018, which was the basis for the termination of his parental rights to five other children in 2016." Although he argues that he was participating in a substance abuse treatment program while he was incarcerated, the circuit court specifically found that his participation in that program was insufficient to show that he remedied his substance abuse issues. Further, even prior to his incarceration, petitioner failed to provide any financial or emotional support to the child and continued to have substance abuse issues. He was incarcerated throughout the proceedings. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the issues of abuse and neglect. Although petitioner also argues that his lack of a bond with the child was "something that could be remedied by setting up visitation between [petitioner] and the child," the child was less than one year old at the time of the dispositional hearing and petitioner's incarceration prevented him from developing a relationship with the child. "Our cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). We have also held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Due to petitioner's failure to ever see the child or provide emotional or financial support for the child, his substance abuse issues, and incarceration, the circuit court was correct to find that the termination of petitioner's parental rights was in the child's best interest. Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 4, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5