# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re: A.W. and S.H.**

**No. 17-1143** (Mineral County 00-JA-37 and 38)

**FILED**

**December 20, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner R. H.,[1] pro se, appeals the December 11, 2017, amended order of the Circuit Court of Mineral County awarding him a judgment against respondent in the amount of $7,962.64, plus post-judgment interest at 5% per year. Respondent M. C., pro se, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal.[2] The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This is a child support matter arising out of an abuse and neglect proceeding. The parties were previously married to each other, and the abuse and neglect case involved A.W., who was petitioner's stepdaughter and is respondent's biological daughter, and S.H., who is the biological daughter of both petitioner and respondent. By order entered February 13, 2002, the Mineral County Circuit Court restored custody of the children to respondent after they had been temporarily removed from her care. With regard to petitioner, the circuit court found that he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner failed to include complete copies of the July 11, 2005, and May 21, 2010, family court orders and of an October 23, 2017, hearing transcript in the appendix. Pursuant to Rule 6(b) of the West Virginia Rules of Appellate Procedure, we hereby supplement the record with complete copies of the July 11, 2005, and May 21, 2010, orders and the October 23, 2017, transcript.

sexually assaulted his stepdaughter A.W.;[3] therefore, because petitioner's daughter S.H. lived in the same home as A.W., the court terminated petitioner's parental rights to S.H. by order entered May 22, 2002, finding that termination was in S.H.'s best interests. On September 1, 2004, the circuit court awarded petitioner post-termination supervised visitation with S.H. However, this Court reversed the circuit court's order awarding petitioner post-termination supervised visitation as there was an insufficient showing of a close emotional bond established between petitioner and S.H. *See In re [A.]W.*, 217 W. Va. 707, 712, 619 S.E.2d 220, 225 (2005).

After the circuit court's termination of petitioner's parental rights, the case was remanded to the Mineral County Family Court for a determination of the amount of petitioner's child support obligation regarding S.H.[4] The family court held a hearing on June 28, 2005, and set petitioner's child support obligation at $289 per month and further required petitioner to provide medical insurance for S.H. In calculating his child support obligation, the family court gave petitioner a $100 monthly credit for providing medical insurance. For medical expenses not covered by insurance, the family court ordered that petitioner and respondent each pay 50% of the cost. The family court directed respondent to provide petitioner with an invoice showing petitioner's share of any uncovered medical expenses within thirty days of respondent's receipt of such an invoice and directed petitioner to pay that amount to respondent. The family court further ordered each party to notify the West Virginia Bureau of Child Support Enforcement ("BCSE") within five days of changes in S.H.'s status, such as a change in the child's name. The family court memorialized its rulings in a July 11, 2005, order.

On April 13, 2010, petitioner filed a petition to modify his child support obligation, alleging a substantial change in circumstances. The family court held a hearing on the petition on May 13, 2010. At the hearing, petitioner did not object to the family court's decision to attribute minimum wage income to him. Respondent testified that contrary to the family court's prior order, she was providing insurance for S.H. and petitioner was not paying his share of the uncovered medical expenses. The family court advised that if respondent wanted to ensure that petitioner paid his share of uncovered medical expenses, she would have to "pursue" the issue.

By order entered May 21, 2010, the family court modified the regime for notifying petitioner of S.H.'s uncovered medical expenses. The family court ordered that respondent must provide petitioner with an invoice showing petitioner's share of any uncovered medical expenses within ten days of her receipt of an invoice and ordered that petitioner pay that amount to respondent within thirty days of his receipt of an invoice. The family court further ordered that,

---

[3]In 2001, petitioner was charged with one count of first-degree sexual assault, one count of first-degree sexual abuse, and two counts of sexual abuse by a custodian resulting from his abuse of A.W. On March 26, 2003, petitioner entered a plea of guilty to six counts of third-degree sexual abuse and was sentenced to ninety days of incarceration on each of the six counts, to be served consecutively. Petitioner was incarcerated from August 4, 2003, to June 15, 2004.

[4]We have long held that the obligation to pay child support may continue beyond the termination of parental rights. *See* Syl. Pt. 7, *In re Stephen Tyler R.*, 213 W. Va. 725, 584 S.E.2d 581 (2003).

because respondent was providing medical insurance for S.H., respondent would receive a $100 deduction in her monthly income for purposes of the child support calculation. The family court found that respondent's monthly income was $2,160 and petitioner's monthly income was $1,257. Accordingly, the family court reduced petitioner's child support obligation to $227 per month.

On September 3, 2010, S.H. was adopted by respondent's new husband; however, respondent failed to notify the BCSE of S.H.'s adoption. The BCSE did not learn of S.H.'s adoption until November 15, 2016. Following an investigation into the matter, wage withholding was halted from petitioner's paycheck. On December 22, 2016, petitioner filed a petition to terminate his child support obligation regarding S.H. The circuit court held an April 10, 2017, hearing, at which petitioner and the BCSE appeared.[5] Given S.H.'s September 3, 2010, adoption by respondent's new husband, the circuit court terminated petitioner's child support obligation. The circuit court further found that, based on the BCSE's proffer, there was an overpayment of child support by petitioner in the amount of $14,777.64.

On May 8, 2017, petitioner filed a motion to initiate wage withholding from respondent's paycheck to recoup petitioner's overpayment of child support. The circuit court held an October 23, 2017, hearing, at which both parties and the BCSE appeared. The BCSE confirmed that the amount of the overpayment was $14,777.64. Respondent testified that from February of 2007, she provided medical insurance for S.H. despite the family court's July 11, 2005, order requiring petitioner to provide S.H. with medical insurance. With regard to uncovered medical expenses, respondent testified that she no longer had bills and invoices for the period from 2005 through 2010, and that when she attempted to reacquire those bills and invoices, she was informed that the records were lost when billing systems changed. Respondent further stated, both on direct examination and during cross-examination by the BCSE's attorney, that larger expenses for braces and the removal of wisdom teeth occurred after S.H.'s September 3, 2010, adoption.

For the period from 2005 through 2010, respondent testified that S.H. had uncovered medical expenses for eyeglasses, doctor visits, and prescription medications. Petitioner objected,

---

[5]The case was returned to the circuit court from the family court following *In re J.L.*, 234 W. Va. 116, 763 S.E.2d 654 (2014), in which this Court held in Syllabus Points 4 and 5:

> 4.      Pursuant to Rule 6 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, when a circuit court enters an order awarding or modifying child support in an abuse and neglect case, the circuit court retains jurisdiction over such child support order.

> 5.      Pursuant to Rule 16a(d) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, a circuit court cannot transfer or remand a child support order that it has entered in an abuse and neglect case to the family court for enforcement or modification.

arguing that the circuit court should not accept respondent's testimony as credible without the relevant bills and invoices as support. While the circuit court did not rule on petitioner's objection at the December 11, 2017, hearing, in an order entered November 27, 2017, the circuit court credited respondent's testimony regarding uncovered medical expenses, as follows:

b.      Half of the amount paid for eyeglasses, calculated by multiplying the average price of eyeglasses ($125.00 per year) for six years[6] and dividing by half, to be $375.00;

c.      Half of the amount paid for doctor visits, calculated by multiplying the $20.00 co-pay by twelve (for two visits per year by six years) and dividing by half, to be $120.00.

d.      Half the amount paid for prescription medications, calculated by multiplying the $20.00 co-pay by two (for two prescriptions per year), multiplying this figure by six (for six years), and dividing by half, to be $120.00.

The circuit court further found that "[petitioner] failed to pay one-half of [uncovered] medical bills, as ordered by the [f]amily [c]ourt."

With regard to the provision of insurance coverage, the circuit court noted, for the period from 2005 through 2010, petitioner received a $100 per month credit against his child support obligation for providing insurance that he did not provide. The circuit court determined that the total amount of the undeserved credit came to $6,200 ($100 per month multiplied by 62 months). Thus, the circuit court found that respondent was entitled to a credit against the $14,777.64 overpayment petitioner paid in child support in the total amount of $6,815 ($6,200 plus $375 plus $120 plus $120). Therefore, the circuit court awarded petitioner a judgment against respondent in the amount of $7,962.64 ($14,777.64 minus $6,815), plus post-judgment interest at 7% per year. However, in an amended order entered December 11, 2017, the circuit court found that West Virginia Code § 48-1-302(a) set the interest rate for child support judgments at 5% per year. Accordingly, the circuit court set forth the same findings, awarded petitioner a judgment in the same amount of $7,962.64, but corrected the rate of post-judgment interest to be 5% per year.

It is from the December 11, 2017, amended order that petitioner now appeals. In *In re J.L.*, 234 W. Va. 116, 763 S.E.2d 654 (2014), we reiterated that:

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review.

---

[6]Respondent testified that S.H. would frequently break eyeglasses as a child.

234 W. Va. at 119, 763 S.E.2d at 657 (quoting Syl. Pt. 2, *Walker v. W.Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997)).

On appeal, petitioner first argues that respondent's failure to timely notify him of S.H.'s uncovered medical expenses relieved him of his obligation to pay his share of those expenses. Petitioner bases this argument on (1) provisions in the July 11, 2005, and May 21, 2010, family court orders setting time frames for respondent to notify petitioner of any uncovered medical expenses; and (2) the family court's comment at the May 13, 2010, hearing that, if respondent wanted to ensure that petitioner paid his share of those expenses, she would have to "pursue" the issue. Based on our review of the July 11, 2005, and May 21, 2010, orders and of the May 13, 2010, video recording, we find that petitioner's obligation to pay his share of S.H.'s uncovered medical expenses was not solely dependent on respondent's compliance with the time frames set forth in the orders. While the family court intended the time frames to facilitate the timely payment by petitioner of his share of the uncovered expenses, we find that nothing in the orders indicates that petitioner was relieved of his obligation if respondent did not comply with the time frames. We find that nothing the family court stated during the May 13, 2010, hearing contradicted its orders, and even if there were an inconsistency, the written orders control over the court's oral statement. *See Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 106 n.5, 459 S.E.2d 374, 383 n.5 (1995) (finding that "it is clear that where a . . . court's written order conflicts with its oral statement, the written order controls"). Therefore, we reject this argument.

Second petitioner argues that the circuit court erred in accepting respondent's October 23, 2017, hearing testimony regarding S.H.'s uncovered medical expenses as credible without the relevant bills and invoices to support it. Respondent counters that given petitioner's consistent failure to pay his share of the uncovered expenses and to provide medical insurance for S.H., the circuit court's judgment against her in the amount of $7,962.64, plus post-judgment interest, was very favorable to petitioner. In *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995), we found that "an appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."

Here, respondent testified consistent with her May 13, 2010, hearing testimony that from February of 2007, she provided medical insurance for S.H. despite the family court's July 11, 2005, order requiring petitioner to do so. Respondent further testified that she did not have bills and invoices for the period from 2005 through 2010, and that when she attempted to reacquire those bills and invoices, she was informed that the records were lost when billing systems changed. Contrary to petitioner's argument, we find respondent acknowledged, both on direct examination and during cross-examination by the BCSE's attorney, that larger uncovered expenses for braces and the removal of wisdom teeth occurred after S.H.'s September 3, 2010, adoption by her new husband. Therefore, we defer to the circuit court's assessment of respondent's credibility. Accordingly, we conclude that the circuit court did not abuse its discretion in giving respondent a credit in the amount of $6,815, which reduced the $14,777.64 overpayment paid by petitioner, and awarding petitioner a judgment in the amount of $7,962.64.

For the foregoing reasons, we affirm the circuit court's December 11, 2017, amended order awarding petitioner a judgment in the amount of $7,962.64, plus post-judgment interest at 5% per year.

                                                                    Affirmed.


**ISSUED**:   December 20, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison