# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* E.W.

No. 19-0821 (Jefferson County 17-JA-51)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.W., by counsel Patrick T. Kratovil, appeals the Circuit Court of Jefferson County's August 5, 2019, order terminating his parental rights to E.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Debbie Flowers Payne, filed a response on behalf of the child in support of the circuit court's order. Respondents R.L. and J.L., the child's intervening foster parents, by counsel Tracy Weese, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he abandoned the child and denying his motion for an improvement period and/or post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the filing of a child abuse and neglect petition alleging pervasive substance abuse against the mother, the DHHR amended the petition to name petitioner as the father and alleged that he abandoned the child. In April of 2019, the circuit court held an adjudicatory hearing and heard the testimony of a DHHR worker and the mother. According to the evidence, the mother was involved in an abuse and neglect proceeding in 2016, after E.W. was born drug-exposed. During the prior case, the mother believed that petitioner was one of two individuals that could be the father of the child, notified petitioner of that possibility, and provided petitioner's contact

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

information to the DHHR to obtain paternity testing. The DHHR attempted to contact petitioner and published notice of the proceedings in his area, but he did not appear for paternity testing. Throughout that period and up until the current petition, petitioner did not provide for the child or attempt to foster a relationship with her. Petitioner presented no evidence.

At the conclusion of the hearing, the circuit court found that petitioner abandoned the child "[b]ased predominately [on] the testimony of [the mother], who told [petitioner] shortly after the [child] was born that he was the father." The court further considered that petitioner "did not testify today to contradict" the mother's testimony that he provided no material support for the child and waited "approximately a year and a half" before presenting himself for paternity testing. The circuit court concluded that petitioner's conduct demonstrated a settled purpose to abandon the child and adjudicated him as an abusing parent. Later, petitioner moved for a post-adjudicatory improvement period, or, alternatively, post-termination visitation.

In July of 2019, the circuit court held a dispositional hearing and heard testimony from petitioner, the managing DHHR worker, and the visitation supervisor. Petitioner admitted that he knew there was a possibility that he was the father of the child shortly after her birth. He explained that he wanted paternity testing completed before he would "fully take care of [the child.]" However, despite this apparent desire, petitioner also admitted that he was contacted by the DHHR to schedule paternity testing during the prior abuse and neglect proceeding, but he did not follow through with testing at that time. The DHHR worker testified that the records indicated petitioner was contacted in November of 2016 regarding the testing, two tests were scheduled, and petitioner failed to appear for either appointment. Finally, the visitation supervisor testified that visitations between petitioner and the child were ceased because he failed to redirect the child when she misbehaved. Petitioner participated in five visitations and missed two other visitations. Additionally, the supervisor opined that the child expressed little to no bond with petitioner and that the child viewed the visitations as playtime rather than an opportunity to visit with petitioner.

Ultimately, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights on the basis that he abandoned the child by failing to establish paternity in the first two years of her life, despite notice that he could be the child's father. The court further denied petitioner's motion for post-termination visitation due to the lack of a bond between the parties. The circuit court's decision was memorialized by its August 5, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption by respondents R.L. and J.L.

2

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in finding that he abandoned the child. Upon review, we find that the DHHR presented clear and convincing evidence in support of the circuit court's finding. Regarding adjudication, we have held

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). In alleging that petitioner abandoned the child, the DHHR was required to prove that he engaged in "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." *See* W. Va. Code § 49-1-201. Here, there was clear evidence that petitioner was aware of the possibility that he was the child's father for several years. The mother provided credible testimony that she informed petitioner that he was one of two possible fathers shortly after the child's birth, and, despite knowing this possibility, he took no action to establish paternity or provide support for the child. Even once the DHHR extended petitioner the opportunity to establish paternity, he failed to follow through with testing.

It is also important to note that petitioner did not testify in support of his defense at adjudication below. We have held that

[b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). As set forth above, the child's mother testified extensively about petitioner's early knowledge that he was likely the child's father and her efforts to have petitioner submit to paternity testing, including informing the DHHR that petitioner was the child's father so the DHHR could have paternity testing ordered. Despite the efforts of the mother and the DHHR to obtain conclusive evidence that petitioner was the child's father, petitioner continued to take no

steps to confirm his paternity for several years and, in the meantime, failed to provide the child with any support. Considering this uncontroverted evidence, we agree with the circuit court's finding that petitioner demonstrated a settled purpose to forego his duties and parental responsibilities to the child and abandoned the child.

On appeal, petitioner relies primarily on his testimony from the dispositional hearing to argue against the finding of abandonment. This evidence, however, is entirely irrelevant to the circuit court's adjudication of petitioner because it was not offered until well after that phase of the case. Although it is unclear why petitioner waited to present his testimony to the circuit court, his reliance on this testimony on appeal does not entitle him to relief. In short, petitioner testified that he desired to confirm his paternity of the child before he supported her, while also admitting that he failed to timely act to confirm paternity. Even if this testimony was properly presented during the adjudicatory hearing, the circuit court's finding that he abandoned the child would still be supported by the record evidence of petitioner's admissions that he would not "fully take care of [the child]" until paternity testing was completed and that he delayed such testing.

Petitioner also argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period or, alternatively, post-termination visitation. As these requests are governed by different standards, petitioner's arguments will be addressed in two parts.

First, a circuit court may grant a parent a post-adjudicatory improvement period if "the [parent] demonstrates, by clear and convincing evidence, that [he] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Most importantly, we have held that "[a]bandonment of a child by a parent[] constitutes compelling circumstances sufficient to justify the denial of an improvement period." Syl. Pt. 2, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991). Because petitioner's actions constituted abandonment of the child, the circuit court did not abuse its discretion in denying his motion for a post-adjudicatory improvement period.

Second, in considering whether post-termination visitation is appropriate, we have held that

> [a]mong other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). "Our cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). The visitation supervisor presented evidence that petitioner and the child did not share a bond. In fact, the child had only begun to recognize petitioner at the last visitation. Based on this evidence, petitioner did not establish a "close emotional bond" that would warrant post-termination visitation. The circuit court did not err in denying his request.

4

Finally, we find no error in the circuit court's termination of petitioner's parental rights.[3] West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. West Virginia Code § 49-4-604(c)(4) clearly sets forth that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent or parents have abandoned the child." Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Thus, based on the circuit court's findings that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that the child's welfare required termination, termination of petitioner's parental rights was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[3]Although petitioner does not assign error to the termination of his parental rights, he generally challenges the circuit court's decision in his argument on appeal. As such, we find it necessary to address this argument.