# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.S.

No. 19-0876 (Webster County 18-JA-58)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's September 4, 2019, order terminating his parental rights to A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he had not successfully completed his improvement period, terminating his parental rights, and denying his request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2018, the DHHR filed an abuse and neglect petition alleging that the child was in imminent danger after authorities discovered her in the care of petitioner, who was under the influence of drugs. Petitioner refused to cooperate with the police or Child Protective Services ("CPS"), submit to a drug test, or allow the officers to see the child or the conditions of the home. The DHHR also alleged that petitioner had a history of severe substance abuse and CPS involvement, including a previous child abuse and neglect proceeding alleging that petitioner's substance abuse impaired his ability to parent. Further, the DHHR alleged that petitioner trafficked drugs in the home and often left the child with the paternal grandparents. The DHHR worker received reports that petitioner was unemployed, often carried large amounts of cash, bragged

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

about not working, and exhibited sores on his face and arms from alleged methamphetamine use. The DHHR worker also discovered that the child's preschool attendance record was very poor and that petitioner used Suboxone but was not enrolled in a formal treatment plan with a clinic.

The circuit court held an adjudicatory hearing in November of 2018. The DHHR presented evidence that, during a previous hospitalization in July of 2018, petitioner tested positive for methamphetamine and, due to his extensive drug use, petitioner's intravenous ("IV") tube was placed in his neck instead of his arms or hands. The DHHR worker also testified that she received numerous reports that petitioner was intoxicated while caring for the child and that he failed to timely drop-off and pick-up the child from preschool. Based upon the evidence presented, the circuit court found that petitioner had previously been adjudicated as an abusing parent due to his drug use; that he continued to abuse drugs, as evidenced by his recent hospital stay and positive drug screen; and that he had no medically approved treatment plan, despite his use of Suboxone. The circuit court set a December 7, 2018, deadline for petitioner to submit a detailed treatment plan for his medically assisted use of Suboxone.

In January of 2019, the circuit court held a dispositional hearing. Having learned that petitioner enrolled in a suitable medically assisted drug treatment program, the circuit court granted petitioner a post-adjudicatory improvement period—the terms of which included petitioner's participation in parenting classes, adult life skills classes, anger management classes, and compliance with his medically assisted drug treatment program. Petitioner was also ordered to find employment. However, in March of 2019, petitioner submitted to a hair follicle test, which showed that he had used methamphetamine. As a result, the circuit court suspended petitioner's supervised visits with the child at the April of 2019, hearing but permitted petitioner's visits to be reinstated if he tested free from substances for three consecutive weeks. Petitioner's visits were never reinstated because he failed to submit clean screens for three consecutive weeks.

After the expiration of petitioner's improvement period, the circuit court held a final dispositional hearing in August of 2019. The DHHR presented evidence that petitioner had not substantially complied with his improvement period because he failed to complete his medically assisted drug treatment program or comply with regular drug screening. The probation officer testified that from April 22 to May 15, 2019, petitioner submitted to drug screens three times per week, but stopped submitting to drug screens after May 15, 2019. The DHHR worker also testified that petitioner had not seen the child since March of 2019, when petitioner tested positive for methamphetamine. Petitioner testified that he only tested positive for his prescribed Suboxone during the course of his improvement period but admitted that he voluntarily quit attending his approved medically assisted drug treatment program on May 15, 2019. Petitioner blamed his lack of transportation for his inability to complete his medically assisted drug treatment program or regularly submit to drug screening but admitted that he failed to follow up with the DHHR's offer for transportation. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that there was "no less restrictive alternative available to protect the health, safety, and welfare of the [child other] than [the] termination of [petitioner's] parental rights." Ultimately, the circuit court terminated

petitioner's parental rights by order entered on September 4, 2019. It is from this dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that he did not successfully complete his improvement period "in a timely fashion" and that he failed to correct the conditions which led to the filing of the petition. Petitioner contends that he substantially complied with the terms and conditions of his improvement period "because he was working, he had a fit and suitable home for the child[,] he was participating in [the DHHR's] services[,] and [he] had never failed a drug screen during his improvement period." We disagree and note that, on appeal, petitioner cannot establish that the circuit court's findings necessary for termination were in error.

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Here, petitioner was ordered to regularly submit to drug screens to reinstate his supervised visitations with the child, but he failed to do so. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). While it is true that petitioner obtained employment, participated in some

---

[2]The mother's parental rights were previously terminated. According to the DHHR, the permanency plan for the child is adoption by her relative foster family.

3

parenting classes, and acquired housing, the record indicates that his drug addiction remained untreated, as he tested positive for methamphetamine in March of 2018, and failed to complete his medically assisted drug treatment program. Further, petitioner could not provide a valid prescription or other documentation to explain where he received his Suboxone since he left the approved medically assisted drug treatment program. Petitioner blamed his lack of transportation for his failure to complete the program yet admitted that he did not follow up with the DHHR regarding offered transportation. Further, petitioner failed to complete his anger management classes, which was a term of his improvement period. Based upon the evidence in the record before this Court, we find no abuse of discretion in the circuit court's finding that petitioner failed to successfully complete his post-adjudicatory improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[3] permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Further, pursuant to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child."

The above-mentioned evidence also supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect given his untreated addiction and noncompliance during the proceedings. Petitioner completely stopped submitting to drug screenings by May 15, 2019, and voluntarily left his medically assisted drug treatment program prior to being properly discharged. Additionally, the record shows that the child's welfare required termination of petitioner's parental rights because his untreated substance abuse prevented him from properly parenting and supervising the child. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). As such, the record supports the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the child's welfare given petitioner's failure to comply with the family case plan.

Finally, petitioner argues that the circuit court erred in denying his request for post-termination visitation because he had a bond with the child. We have held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syllabus Point 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl., *In re Alyssa W.*, 217 W. Va. 707, 619 S.E.2d 220 (2005). Despite petitioner's contention that he had a bond with the young child, there was no other corroborating evidence of such a bond. In contrast, the DHHR presented evidence that the child had a strong bond with her grandparents, who had cared for her for the previous year and a half. Because the record does not show that post-termination with the child was in the child's best interest, we find no error in the circuit court's denial of petitioner's request for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison