STATE OF WEST VIRGINIA

*In re* **J.N.**

**No. 19-1177** (Kanawha County 18-JA-552)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.F., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's November 20, 2019, order accepting her voluntary relinquishment of her parental rights to J.N. and denying her post-termination visitation with the child.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, J. Rudy Martin, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner after another child in the home, five-month-old A.N., was found dead with bruising and scratching to the head and face.[2] The petition specifically noted that petitioner lived in a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In October of 2018, the DHHR filed an amended petition related to additional parties not at issue on appeal.

1

home with fifteen other people. Petitioner claimed that she fed A.N. and placed her in her playpen before leaving the home with her boyfriend, leaving the children in the care of other adults in the home. Later that evening, an adult placed a call to 9-1-1 and stated that A.N. was not breathing. Her deceased body had signs of unexplained trauma, including bruising to the left side of her head, scratches on her right temple, and marks around her nostrils. The petition further indicated that A.N. was born drug-exposed and had been taken to the hospital at two months old for bruising to the head. According to the petition, "[t]he WV Medical Examiner's Office . . . determined that [A.N.] died from non-accidental trauma." Finally, the petition indicated that petitioner's oldest child, S.N., died of sudden infant death syndrome in 2014. Because of the extreme circumstances surrounding A.N.'s death, the DHHR alleged that J.N. was in imminent danger and removed the child from the home, which removal was later ratified at a preliminary hearing.

Thereafter, the circuit court convened multiple adjudicatory hearings over several months. At one hearing, the circuit court was informed that petitioner's supervised visitation with the child was suspended because she tested positive for marijuana on six drug screens in June and July of 2019. Thereafter, the circuit court ordered that petitioner could resume visitation if she provided clean drug screens. After this order, petitioner tested positive for marijuana at least four additional times, although she eventually provided a negative screen. Ultimately, the circuit court adjudicated petitioner as an abusing parent by order entered in October of 2019. The circuit court found that the evidence demonstrated that the living conditions in the home were deplorable as evidenced by post-mortem bites found on A.N.'s body due to a cockroach infestation. Further, the evidence demonstrated drug use in the home and that A.N.'s autopsy revealed that the child's body contained enough methamphetamine to be lethal but for the blunt force trauma sustained to her head. According to the medical examiner, the child would have exhibited clear signs and symptoms of her injuries, including seizing and trouble breathing, which would have been obvious to anyone present. The circuit court found that none of the adults in the home made any effort to provide a reasonable explanation for what happened to the child, that the statements given were "completely inconsistent with the medical evidence presented," and that it was not possible for the adults in the home on the date of A.N.'s death to not have known that something happened to the child.

At a dispositional hearing held in October of 2019, the circuit court permitted petitioner to voluntarily relinquish her parental rights to J.N. Petitioner then moved for post-termination visitation with the child, which the circuit court denied upon finding that it would not be in the child's best interests. Petitioner now appeals from the circuit court's November 20, 2019, dispositional order.[3]

---

[3]According to respondents, the DHHR filed an amended petition against the child's father and proceedings in regard to him are ongoing. The child is currently placed with relatives. The permanency plan for the child is reunification with the father, while the concurrent permanency plan is adoption in his current placement.

(continued . . . )

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's lone assignment of error concerns the circuit court's denial of her request for post-termination visitation. According to petitioner, she shared a strong emotional bond with the child and visits during the proceedings went well. As such, petitioner asserts that post-termination visitation would be appropriate. We disagree.

In addressing post-termination visitation, the Court has directed as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner repeatedly asserts that a strong emotional bond existed between her and the child, but the record simply does not support this assertion. In fact, none of the portions of the record to which

Additionally, although petitioner appeals from the circuit court's November 20, 2019, dispositional order, the record shows that petitioner filed a motion to reconsider the order on appeal. The circuit court held a hearing on the motion and again denied petitioner's request for post-termination visitation.

petitioner cites contain any evidence of a strong emotional bond. At best, the record shows that one of the goals of her case plan was to "maintain and nurture bond between" petitioner and the child, but the record is devoid of any evidence that the bond was of such strength that continued visitation following petitioner's voluntary relinquishment of her parental rights was necessary for the child's wellbeing. As this Court has held, "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Indeed, in analyzing whether post-termination visitation was appropriate in that case, we noted that "the possibility of post-termination visitation is usually considered in cases involving children significantly older" than the child at issue in that case, who was only one year old when the case was initiated. Here, J.N. was only two years old when the circuit court denied petitioner's request for post-termination visitation, which was in keeping with this Court's prior holdings regarding the development of close emotional bonds.

Petitioner further repeatedly asserts that both the DHHR and the guardian ad litem supported post-termination visitation, but the record again does not support this assertion. At best, the guardian and the DHHR indicated at various times that they did not oppose post-termination visitation. The only recommendation from the DHHR in regard to the possibility of post-termination was for extensive restrictions on such visitation in the event that the circuit court determined continued visitation would be in the child's best interests. Further, the portion of the record to which petitioner cites to assert that the guardian actively recommended post-termination visitation simply does not contain such a recommendation. Instead, the guardian ad litem clearly recommended that the child "may receive post-termination visits from [petitioner] . . . provided, however, that the contact is in [the child's] best interests." On appeal, the guardian ad litem is explicit that this recommendation "was not intended to be an endorsement of [petitioner's] position set forth in her appeal." Instead, the guardian ad litem asserts that "the recommendation was to suggest that if the [c]ourt did allow any visitation that it be severely limited."

More importantly, the circuit court specifically found that continued visitation would not be in the child's best interests, which is, ultimately, the controlling determination on this issue. *See Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children."). Indeed, the disturbing facts surrounding A.N.'s death and petitioner's conduct in regard to the child's death support the circuit court's denial of post-termination with J.N. As the circuit court found below, petitioner "did nothing to protect the infant, [A.N.]; and there is no reason to believe" that petitioner would protect two-year-old J.N. This finding was based on the fact that petitioner "did nothing to assist" the investigation into A.N.'s death and "lied to the [Child Protective Services] worker and when providing testimony to the [c]ourt." Given that A.N. died of blunt force trauma to the head while in petitioner's care and had a lethal amount of methamphetamine in her system, the circuit court's findings in this regard are well supported. As such, we find no error in the circuit court's denial of her motion for post-termination visitation.[4]

---

[4]In support of this assignment of error, petitioner also argues that post-termination visitation is appropriate because the permanency plan is for the child to be placed with the father,

(continued . . . )

Lastly, because the proceedings regarding the child's father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)[5]], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

---

with whom she alleges she shares a "good co-parenting relationship." This argument does not entitle petitioner to relief for several reasons. First, respondents to this action have indicated that an amended petition raising allegations against the father was filed below and proceedings in regard to his parental rights to J.N. are ongoing, thereby calling into question whether the child will be placed back into his permanent custody. Further, the record shows that petitioner admitted to filing for a domestic violence protective order against the father shortly before the petition's filing in this matter, thereby undermining her unsupported assertion of a good relationship with the father. Finally, the fact that the child may be placed back into the father's custody has no impact on the circuit court's finding that continued contact between petitioner and J.N. would not be in the child's best interests, given the facts surrounding A.N.'s death and petitioner's failure to take any action to protect that child.

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 20, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison