**STATE OF WEST VIRGINIA**

**FILED**

**December 10, 2020**

*In re* **J.T. and L.B.**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 20-0445** (Wood County 19-JA-20 and 19-JA-21)

## MEMORANDUM DECISION

Petitioner Mother E.T., by counsel Heather L. Starcher, appeals the Circuit Court of Wood County's March 6, 2020, order terminating her parental rights to J.T. and L.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Debra Lynn Steed, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon insufficient evidence, and in denying her post-termination visitation with J.T.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner abused controlled substances, which negatively affected her ability to parent. Petitioner admitted to using heroin, marijuana, unprescribed Suboxone intravenously, and pain pills. The DHHR further alleged that a needle containing a clear liquid was observed next to then six-month-old J.T.'s "pack-n-play," where he slept. The DHHR also alleged that petitioner's home was unsanitary and without running water. L.B. was in her father's custody at the time the petition was filed, and petitioner contended that she exercised liberal visitation with that child. Petitioner waived her preliminary hearing. Thereafter, the circuit court ordered the DHHR to arrange supervised visitation between petitioner and the children upon receipt of two random drug screens that were negative for controlled substances.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Petitioner stipulated to the allegations in the petition in March of 2019, and the circuit court adjudicated her as an abusing parent. Petitioner also moved for a post-adjudicatory improvement period, which the circuit court granted. In June of 2019, the circuit court held a review hearing on petitioner's improvement period. Petitioner did not appear but was represented by counsel. Based upon the representations of the DHHR, the circuit court terminated petitioner's post-adjudicatory improvement period.

At the subsequent dispositional hearing in July of 2019, petitioner and the DHHR jointly moved to continue disposition based upon her representation that she had entered a substance abuse detoxification facility. The circuit court granted that motion. Petitioner moved for a post-dispositional improvement period in September of 2019, which was granted. Additionally, upon the motion of the DHHR, the circuit court ordered petitioner to complete an inpatient substance abuse treatment as an additional term of her improvement period. Petitioner's post-dispositional improvement period was reviewed and continued in October of 2019.

The circuit court reviewed petitioner's post-dispositional improvement period again in December of 2019. The DHHR reported that petitioner was noncompliant with multiple terms of her improvement period. According to the DHHR, petitioner admitted to her case worker that she relapsed on heroin. Additionally, petitioner had not appeared for random drug screening since October of 2019, and, as a result, the DHHR suspended her supervised visitation with J.T. Petitioner also failed to participate in adult life skills classes or individualized therapy. The DHHR moved to continue petitioner's improvement period to see if she would comply with substance abuse treatment, which the circuit court granted.

The circuit court held the final dispositional hearing in March of 2020. Petitioner appeared in person and by counsel. The DHHR presented petitioner's case manager from Amity, an inpatient substance abuse treatment facility. The case manager testified that petitioner committed four rule violations on the fourth day of her treatment. The case manager explained that the facility offered to enter into a "behavior contract" with petitioner and to allow her to remain in treatment, but she declined and left the facility against medical advice on the fifth day. Petitioner testified that she left the facility because she did not get along with the therapist. According to petitioner, she entered into a different substance abuse treatment facility, known as the "Newness of Life" ("Newness") seventeen days after leaving Amity. Petitioner reported that she attended that program for twenty-two days before leaving against medical advice. She explained that she left the "Newness" program because she "did [not] feel she was receiving the treatment she needed." Then, petitioner entered into a "sober living home" called "A New Thing." At the time of the dispositional hearing, petitioner had been attending this program for seven days. She testified that the program would last eight months. Further, petitioner testified that the last time she visited J.T. was in November of 2019, due to her failure to participate in services and maintain contact with the DHHR. Petitioner further testified that she participated in parenting classes only for "a couple weeks" and did not complete her psychological evaluation as ordered. Petitioner conceded that she attended individualized therapy only in August of 2019. Petitioner also mentioned that she had been sober twenty-eight days, which placed her last substance use immediately before entering the "Newness" program.

Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect and abuse in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's parental rights. Further, the circuit court denied petitioner post-termination visitation with J.T., but permitted visitation with L.B. at the discretion of that child's guardian. The circuit court memorialized its decision by its March 6, 2020, order, which petitioner now appeals.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon insufficient evidence that there was no reasonable likelihood that she could correct the conditions of neglect and abuse in the near future. She asserts that the circuit court "did not consider termination of custodial rights only," which she argues was a more appropriate disposition considering her attempts at substance abuse treatment. Further, petitioner argues that termination of her parental rights to L.B. was erroneous because she was already in a permanent placement with the father. Upon our review of the record, petitioner is entitled to no relief.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental

---

[2]J.T.'s unknown father's parental rights were terminated below. According to the parties, the permanency plan for that child is adoption in his current foster placement. L.B. remains in the custody of her nonoffending father and has achieved permanency in his care.

3

health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with a reasonable family case plan, despite an ample opportunity to do so. The circuit court granted petitioner two improvement periods, yet found that she was noncompliant in both instances. West Virginia Code § 49-4-610(4)(A) requires that "the respondent shall be responsible for the initiation and completion of all terms of the improvement period." However, by petitioner's own admission, she failed to substantially participate in adult life skills and parenting classes, her psychological evaluation, individualized therapy, or random drug screening, all of which were reasonable terms of her family case plan. Moreover, petitioner's failure to participate in random drug screening and her failure to maintain consistent contact with the DHHR caused her supervised visitations with J.T. to be suspended. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner was clearly aware the she had to participate in drug screening in order to visit with then-one-year-old J.T., but she made no attempt to satisfy that obligation from November of 2019, through the final dispositional hearing in March of 2020.

Most importantly, petitioner demonstrated an inability to follow through with an inpatient substance abuse treatment program or curb her controlled substance abuse on her own. She attended a detoxification program in July of 2019, but admittedly relapsed by using heroin. She attempted the Amity treatment program, but she left after only five days of treatment. By her own admission, she relapsed between leaving the Amity program and beginning the "Newness of Life" program. At the final dispositional hearing, J.T. had been out of petitioner's custody for over a year, and petitioner had been sober for only twenty-eight days.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. As alleged in the petition, petitioner exposed J.T. to dangerous circumstances by leaving a hypodermic needle filled with a clear liquid by his bedside. Petitioner's pursuit of substance abuse treatment, while admirable, was completely speculative given her past unsuccessful attempts and her consistent, admitted drug use throughout the proceedings below. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future.

4

To the extent that petitioner argues for a less-restrictive dispositional alternative, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based upon the circuit court's finding, it did not err in terminating petitioner's parental rights without the use of a less-restrictive dispositional alternative, such as the termination of her custodial rights only. Furthermore, we find no merit to petitioner's argument that because L.B. achieved permanency, the termination of petitioner's parental rights to this child was erroneous. We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Petitioner endangered L.B.'s sibling through her substance abuse and, as the circuit court found, that substance abuse was not expected to improve. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights to L.B.

Finally, petitioner argues that the circuit court erred in denying her post-termination visitation with J.T. She cites to notes she received from the visitation supervisor that J.T. enjoyed visiting with petitioner and that she was appropriate during the visits. She believes that she enjoyed a close emotional bond with J.T. This Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Although the evidence may establish positive visitations between petitioner and J.T., petitioner fails to cite to any evidence that continued contact with her would be in the child's best interests or that continued visitation would not be detrimental to the child. Further, J.T. was only six months old when petitioner's substance abuse necessitated his removal from her care, and "[o]ur cases indicate that a close

emotional bond generally takes several years to develop." *In re Alyssa W*., 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Accordingly, we do not find that the circuit court erred in denying petitioner post-termination visitation with J.T.

      For the foregoing reasons, we find no error in the decision of the circuit court, and its March 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison