**FILED**

**June 22, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.L., J.L., S.L.-1, and S.L.-2**

**No. 21-0111 and 20-0915** (Harrison County 20-JA-77-2, 20-JA-78-2, 20-JA-79-2, and 20-JA-80-2)

# MEMORANDUM DECISION

Petitioner Mother C.S., by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's September 17, 2020, order denying her request for an improvement period and terminating her parental rights to R.L., J.L., S.L.-1, and S.L.-2.[1] Petitioner also appeals the circuit court's January 13, 2021, order denying her request for modification of the dispositional order. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's orders. The guardian ad litem ("guardian"), Dreama D. Sinkkanen, filed a response on behalf of the children also in support of the circuit court's orders. On appeal, petitioner argues that the circuit court erred in (1) denying her motion for a post-adjudicatory improvement period, (2) terminating her parental rights, (3) and denying her post-termination visitation with S.L.-1 and S.L.-2.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2020, the DHHR filed a child abuse and neglect petition against petitioner and the father alleging drug use; physical, mental, and verbal abuse of the children; and failure to provide the children with adequate food, medical, and dental care. According to the petition, the DHHR received three referrals between November of 2019 and March of 2020 concerning petitioner's care of the children. The referrals alleged that petitioner verbally threatened to harm

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as S.L.-1 and S.L.-2, respectively, throughout the memorandum decision.

the children, abused illegal substances, and "experienced retaliation from substance users or dealers that threw rocks through her car windshield and window in her home." According to the petition, the referrals also indicated that petitioner physically abused the children and that she was arrested while the children were in her care. The DHHR also alleged that petitioner failed to consistently supervise the children or provide them with proper medical or dental care.

The DHHR alleged that, as a result of the referrals, two Child Protective Services ("CPS") workers made an unannounced visit to petitioner's residence which was unsuccessful. The workers later returned to the home and interviewed petitioner over the vocal objections of the father. According to the petition, petitioner disclosed that she was arrested for falling asleep in a laundromat parking lot and was in possession of Klonopin without a valid prescription. Petitioner claimed she previously had a prescription for the drug from another state. Petitioner stated she was incarcerated for four days after the arrest until the father paid her bail. The DHHR alleged that petitioner also admitted to using marijuana and stated that she would be positive for marijuana and Klonopin if she participated in a drug screen. Petitioner further admitted that she continued to use Klonopin upon her release from incarceration, which she obtained from a family member. According to the petition, petitioner claimed she was attempting to obtain a prescription for the drug but that her doctor's appointments were being rescheduled due to the COVID-19 pandemic. After their interview, CPS workers obtained the criminal complaint from petitioner's arrest, which stated that petitioner was also in possession of several other controlled substances, including oxycodone and methamphetamine. Petitioner further disclosed to the CPS workers that two-year-old S.L.-1 was living with a former neighbor, and seven-year-old R.L. and six-year-old J.L. were living with their maternal grandfather since her arrest in March of 2020. Petitioner stated that one-year-old S.L.-2 was living with petitioner's sister. Petitioner averred that she would have all of the children back in her care within a few weeks. The DHHR alleged that the CPS workers attempted to interview the children and agreed with petitioner upon a time and date to do so. According to the petition, the CPS workers were en route to petitioner's residence on the day of the interview when they received a phone call from the children's grandfather informing them that petitioner would not permit interviews with the children. The CPS workers arrived at petitioner's home but no one answered the door and petitioner did not answer her phone.

According to the petition, CPS workers interviewed the children's various caretakers, including petitioner's former neighbor, who was babysitting S.L.-1. The neighbor said she had cared for the child for approximately one year, but that petitioner refused to sign any paperwork giving her the ability to provide the child with medical or dental care or to have the child vaccinated. The neighbor reported that petitioner spoke to her previously about making the child available for the scheduled CPS interview. However, the neighbor reported that petitioner did not respond to text messages or calls on the morning of the scheduled interview. Further, the neighbor reported that petitioner had not seen the child since December of 2020 and that petitioner was physically aggressive toward the child and not "nurturing." Next, the CPS workers interviewed R.L. and J.L. who reported that they had been residing with their maternal grandfather for two weeks. The children reported that they were not provided adequate food when living with petitioner. The children also reported that petitioner had a friend who physically abused them when petitioner was not present. The grandfather disclosed that he observed petitioner under the influence of controlled substances on two recent occasions and believed that petitioner had abused substances for the last seven years. The CPS workers also went to petitioner's sister's home, where

she reported being S.L.-2's caregiver since July of 2019, when the child was just eleven months old. The sister reported that she had not seen petitioner since March of 2020, and that petitioner did not provide any support for the child. Finally, the sister reported that petitioner physically abused the children and abused drugs. Petitioner waived her preliminary hearing.

In July of 2020, the circuit court held an adjudicatory hearing wherein petitioner stipulated to a history of drug abuse that led to the neglect of the children. Petitioner admitted she allowed other individuals to provide for the children's daily physical and emotional needs, instead of providing for them herself. Petitioner also stipulated that her substance abuse and "the corresponding lack of parental judgment" constituted neglect of the children. The circuit accepted petitioner's stipulation, adjudicated her as an abusing parent, and ordered that petitioner submit to a psychological, drug, and alcohol evaluation; counseling; random drug testing; individualized therapy; parenting and life skills classes; maintain a substance-free residence; obtain employment; and cooperate with service providers. Petitioner then moved for a post-adjudicatory improvement period.

The circuit court held a dispositional hearing in September of 2020 wherein petitioner did not appear but was represented by counsel. Petitioner's counsel moved for a continuance. However, the circuit court denied the motion, finding that petitioner had notice of the hearing. At the hearing, a CPS worker testified that petitioner was referred for supervised visitation services and participated in some visits before services were suspended due to her lack of participation. As a result, the CPS worker testified that petitioner had not seen the children in over a month at the time of the dispositional hearing. The CPS worker also testified that petitioner tested positive for several controlled substances throughout the proceedings, including methamphetamine and fentanyl. The worker further testified that petitioner initially complied with drug screening but stopped complying and missed eleven random screens. The worker also testified that petitioner was scheduled to participate in a parental fitness evaluation, but it was unclear whether petitioner participated in the evaluation. The worker testified that the DHHR offered petitioner transportation to the evaluation, but that petitioner declined that assistance. The worker testified that petitioner also failed to maintain regular contact with the DHHR and had no contact with the DHHR in over a month.

At the conclusion of the dispositional hearing, the circuit court found that petitioner failed to meet her burden of demonstrating that she was likely to participate in or complete an improvement period. Additionally, the circuit court found that petitioner continued to abuse drugs and failed to seek any form of treatment for the same. The circuit court also found that petitioner failed to fully avail herself of all the resources offered to her to correct the parental deficiencies that led to the abuse and neglect petition. Ultimately, the circuit court denied petitioner's motion for an improvement period, finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The circuit court also ordered that if petitioner could show good cause for her failure to appear at or before the father's dispositional hearing, it would entertain a motion to re-open the evidence in the matter. Finally, the circuit court ordered that petitioner was permitted post-termination visitation with R.L. and J.L., but only at the request of the children and with the consent of their guardians. The circuit court prohibited post-termination visitation between petitioner and S.L.-1 and S.L.-2 citing the children's young ages, and lack of

3

contact and long-term parenting. The circuit court terminated petitioner's parental rights by order entered on September 17, 2020.

The next month, petitioner filed a motion to modify the circuit court's order terminating her parental rights to the children. In support of her motion, petitioner represented that she previously filed a motion for a post-adjudicatory improvement period. Petitioner stated that the DHHR had supported her motion for an improvement period. In her motion to modify the court's dispositional order, petitioner attributed her absence at the dispositional hearing to her recent move from Harrison to Upshur County, West Virginia. Petitioner represented in her motion that she did not have transportation on the day of the hearing, and that she lacked a working phone or internet service to contact her counsel. Petitioner maintains she moved to Upshur County to move away from people she believed would adversely impact her ability to obtain and maintain sobriety. Petitioner further contended that since her dispositional hearing, she took the initiative to schedule her psychological evaluation, applied for housing, scheduled a doctor's appointment to discuss mental health concerns, and sought employment. According to her motion, petitioner also tested negative for controlled substances in a recent drug screen and sought to transfer her drug screening to Upshur County. Finally, petitioner said that she asked the DHHR to set up parenting and adult life skills classes for her. However, petitioner acknowledged that the DHHR failed to setup any services given it was unsure whether such a referral could be made after petitioner's parental rights had been terminated.

In December of 2020, the circuit court held a hearing on petitioner's motion to modify the dispositional order. At the hearing, petitioner testified as to the arguments set forth in her motion. Next, a CPS worker testified that petitioner missed her rescheduled parental fitness evaluation that was scheduled for November of 2020. Further, the CPS worker testified that petitioner had only drug screened once that week and admitted to a service provider that she was struggling to participate in screening. The worker also testified that petitioner had not visited the children since September of 2020 and that her visitation was sporadic during the proceedings. Finally, the worker testified that petitioner was not engaged during her visits with the children and instead was on her phone or not watching them.

After considering the evidence, the circuit court found that petitioner knew about the September of 2020 dispositional hearing but still moved from Harrison to Upshur County. The circuit court also found that petitioner had still not enrolled in substance abuse treatment and missed her rescheduled psychological evaluation. The circuit court further found that petitioner was scheduled to participate in seven drug screens in the two weeks prior to the instant hearing but only drug screened once during those two weeks. Finally, the circuit court found that petitioner failed to show good cause for her failure to attend the dispositional hearing and denied her motion to modify the dispositional order by its January 13, 2021, order.[2] Petitioner also appeals the September 17, 2020, order terminating her parental rights to the children.

The Court has previously established the following standard of review:

---

[2]The father's parental rights were terminated below. The permanency plan for the children is to adoption in their respective foster homes.

4

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she participated in services until early in August of 2020 and because the DHHR supported her request for an improvement period in testimony during a September of 2020 hearing. Petitioner acknowledges a decline in participation with services beginning in August of 2020 but contends that she had been participating well enough for the DHHR to support her motion for an improvement period. As such, petitioner asserts that she showed sufficient improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that she made some improvements, the record shows that petitioner failed to correct the conditions of abuse and neglect that led to the filing of the abuse and neglect petition. Specifically, petitioner failed to fully avail herself of the resources offered to her and failed to cooperate with or participate in the development of a family case plan. Although petitioner asserts that she participated in some services, such as visitation, these services were ultimately foreclosed due to her lack of participation. Further, petitioner continued to test positive for multiple controlled substances, including methamphetamine and fentanyl, while missing eleven scheduled drug screens. Petitioner also failed to appear for a scheduled parental fitness evaluation in September of 2020 and again in November of 2020, after filing her motion to modify the dispositional order. Petitioner was offered transportation assistance to attend the evaluation but declined the DHHR's offer. Petitioner also failed to maintain regular contact with the DHHR and had no contact with it whatsoever for weeks prior the dispositional hearing. Finally, petitioner

failed to appear at the dispositional hearing, despite receiving proper notice. As such, by continuing to abuse drugs and failing to fully avail herself of services, petitioner failed to make any substantial changes to her circumstances despite the DHHR's interventions and services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

Next, petitioner argues that the circuit court erred in failing to consider alternatives to the termination of her parental rights. According to petitioner, the circuit court was required to give precedence to the dispositions listed in West Virginia Code § 49-4-604(c), and it should have granted her disposition pursuant to West Virginia Code § 49-4-604(c)(5).[3] We find no error in the circuit court's termination of petitioner's parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(d).

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner continued to abuse controlled substances, ceased visitation with the children, and stopped participating in the proceedings altogether. Notably, petitioner does not dispute that she missed or failed several drug screens and did not have contact with the children throughout the proceedings, instead she argues that she could have been granted a less-restrictive disposition to resolve these issues. Specifically, petitioner argues that if she had been granted a less-restrictive disposition than the termination of her parental rights, she would have complied with services and resolved her issues of drug abuse. Yet the record below indicates that petitioner was noncompliant with the DHHR and refused to participate in services during the proceedings that could have remedied these issues. While petitioner claims to have sought drug treatment during the proceedings, she provided no record of this to the circuit court. Ultimately, petitioner's assertion that she could remedy her issues with more time ignores the fact that she failed to stay drug free, attend scheduled court hearings, or participate in drug screens sufficiently to justify the return of the children to her care.

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative to the termination of her parental rights, given that we have previously held that

---

[3]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

6

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation with S.L.-1 and S.L.-2 because she shared a bond with the children despite their young ages. Petitioner also contends she should be permitted contact with S.L.-1 and S.L.-2 in light of the circuit court's decision allowing her to exercise visitation with R.L. and J.L. We find petitioner's arguments unavailing.

In regard to post-termination visitation, we have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in S.L.-1's and S.L.-2's best interests to grant visitation. Although petitioner argues she formed a strong bond with these younger children, none of the other parties in the case agreed. Further, at the time of the dispositional hearing, three-year-old S.L.-1 had been living with a caretaker for fifteen consecutive months, or more than one-third of his entire life. Two-year-old S.L.-2 was in the care and custody of a different caretaker for a similar length of time, constituting more than half of her entire life outside of petitioner's home. Although petitioner may have affection for the children, "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with S.L.-1 and S.L.-2.[4]

---

[4]Petitioner raises a fourth assignment of error in which she alleges that the circuit court erred in denying her motion to modify the court's dispositional order. We note, however, that petitioner's parental rights had already been terminated, thus depriving her of standing to file such

(continued . . . )

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2020, and January 13, 2021, orders are hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

a motion under West Virginia Code § 49-4-606. Syl. Pt. 6, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007) ("A person whose parental rights have been terminated by a final order . . . does not have standing as a 'parent,' pursuant to [West Virginia Code § 49-4-606] to move for modification of disposition of the child with respect to whom his/her parental rights have been terminated."). As such, it is unnecessary to address the circuit court's denial of this motion, given that petitioner lacked standing to have filed the same. However, even if the circuit court had jurisdiction to address petitioner's motion, petitioner failed to demonstrate a material change in circumstances requiring a different disposition. First, the circuit court stated it would consider a motion to modify disposition if petitioner could show good cause for her failure to attend the September of 2020 dispositional hearing. At a subsequent hearing, the circuit court determined that petitioner knew about the scheduled dispositional hearing but still chose to move from Harrison to Upshur County, West Virginia, and to not attend the hearing. Petitioner also failed to attend a scheduled psychological evaluation in November of 2020—two months after the dispositional hearing—despite it being rescheduled after she missed a prior such appointment. Additionally, petitioner was scheduled to drug screen on seven occasions in the two weeks preceding the court's hearing in December of 2020 on petitioner's motion to modify disposition. The record reflects that petitioner only completed one of the seven scheduled screens. Consequently, under the facts presented here, we find that petitioner is entitled to no relief.

8