# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **W.E.**

**No. 21-0946** (Harrison County 21-JA-62-1)

## MEMORANDUM DECISION

Petitioner Mother K.F.-H., by counsel Allison McClure, appeals the Circuit Court of Harrison County's October 8, 2021, order terminating her parental rights to W.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying her request for an improvement period, (2) terminating her parental rights, and (3) denying her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2021, the DHHR filed an abuse and neglect petition alleging that petitioner had a history of mental health issues and substance abuse. The DHHR alleged that petitioner admitted to marijuana usage during her pregnancy with W.E., including on the day of his birth and to previously using methamphetamine. The DHHR further alleged that petitioner was previously diagnosed with schizophrenia but did not take any medication for her illness. According to the petition, petitioner admitted to hearing voices after giving birth and underwent a psychological

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

evaluation at the hospital. The DHHR noted that petitioner had to be prompted by hospital staff to feed the baby after five hours of the child not feeding. The DHHR also alleged that the father had to be removed from the hospital by security because he threatened to throw objects at petitioner. The circuit court held a preliminary hearing later that month where petitioner did not appear but was represented by counsel.

The circuit court held an adjudicatory hearing in March of 2021 during which it granted a motion from the DHHR to appoint a guardian ad litem for petitioner due to her mental health issues. The DHHR presented evidence supporting the allegations in the petition relating to petitioner's substance abuse. The court continued the hearing and ordered petitioner to participate in drug screens. The circuit court held the continued adjudicatory hearing in June of 2021 during which the DHHR presented evidence that a referral for petitioner to participate in drug screens was made on April 28, 2021, at the Harrison County Day Report Center. However, petitioner did not appear for a drug screen until June 7, 2021, at which point she signed in and was told to return after lunch. The DHHR represented that petitioner failed to return or complete a drug screen that day. After considering the evidence, the circuit court adjudicated petitioner as an abusing parent. Following the hearing, petitioner moved for a post-adjudicatory improvement period while the DHHR filed a case plan requesting petitioner's parental rights be terminated based on her noncompliance with services.

The circuit court held a final dispositional hearing in August of 2021. At the hearing, a psychologist who conducted petitioner's parental fitness evaluation testified that petitioner disclosed mental health issues that caused her to hear voices, have suicidal ideations, and abuse multiple prescription and controlled substances. The psychologist stated that petitioner continued to have symptoms of psychosis while on psychiatric medication and struggled to comply with her medication regimen. Based on his interview and testing, the psychologist opined that petitioner had schizophrenia or another psychotic disorder, borderline personality disorder, moderate amphetamine use disorder, and moderate cannabis use disorder. He further opined that she had a guarded to poor prognosis and

> currently has emotional problems that impact her parental capacity to care, protect and change in order to provide adequately for her child at this time and thus does not have the ability to parent on an unsupervised basis at this time. It would be important that she maintains medication management and attend weekly psychotherapy to ensure that she can continue to provide a safe haven for her child.

The psychologist recommended that petitioner attend individual counseling, continue on her psychiatric medication, engage in self-help groups to maintain sobriety, and participate in couples therapy with the father.

The DHHR further presented evidence that the parents participated in drug screens prior to the beginning of the hearing, and that both screens were positive for controlled substances. Specifically, petitioner tested positive for amphetamine, methamphetamine, and marijuana. Based

on the parents' positive screens, the court inquired of each parents' counsel as to any concerns with continuing the hearing. Petitioner's counsel reported that she had no concerns and stated that petitioner was conversing appropriately the day of the hearing, presented better than she had during prior interactions, and confirmed that petitioner's last drug use was approximately two days before the hearing.

Next, a CPS worker testified that the parents had failed to comply with random drug screens throughout the proceedings but acknowledged that the parents were attending visitation and some in-home services and completed their parental fitness evaluations. However, the worker further stated that there were concerns with the parents' provision of care to the child during the supervised visits. Finally, petitioner testified and defended some of her noncompliance with services by stating that she did not feel she was receiving actual instruction from her parenting and adult life skills provider. Petitioner also claimed that, other than feeding the child incorrectly, no other concerns about her parenting were brought to her attention during supervised visits. Under questioning, petitioner did acknowledge that she was noncompliant with drug screens but claimed that the process was confusing and that she was willing to participate in required services.

In light of the evidence presented at the dispositional hearing, the court found that petitioner failed to meaningfully participate in the services afforded her despite the assistance of service providers. The court also found that petitioner failed to participate in several drug screens and continued her substance abuse. Based upon this evidence, the court determined that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the child to terminate petitioner's parental rights.[2] The circuit court also denied petitioner post-termination visitation with the child. The circuit court entered an order reflecting its decision on October 8, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The father's parental rights were terminated below. The permanency plan for the child is adoption in his current foster home.

3

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she participated in some services prior to her dispositional hearing; was very honest with DHHR workers, service providers, and the court about her history, deficiencies, and shortcomings; and was willing to do anything required of her in an improvement period. According to petitioner, various service providers "made no efforts" to assist her with enrolling in couples counseling or monitoring her medication intake. Petitioner also acknowledges that she "had not done what she should have done in this case at the time of the [dispositional] hearing" but believes that she was warranted an improvement period in the best interests of the child. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that she made some improvements, the record shows that petitioner failed to demonstrate that she was entitled to an improvement period. Specifically, petitioner struggled to comply with her prescribed medication regimen throughout the proceedings. A forensic psychologist evaluated petitioner during the proceedings and stated that she had a guarded to poor prognosis for achieving minimally adequate parenting. The psychologist went on to note in his evaluation that petitioner has emotional problems that impact her parental capacity to care, protect and change in order to provide adequately for her child. He concluded that petitioner does not have the ability to parent on an unsupervised basis. Petitioner compounded the negative evaluation by testing positive for amphetamine, methamphetamine, and marijuana during the proceedings—including the day of the final dispositional hearing—and missing other drug screens altogether. Although petitioner asserts that she recognized and identified her own deficiencies during the proceedings, she was apparently unwilling or unable to fully participate in services to remedy those deficiencies. As such, by continuing to abuse drugs and failing to properly treat her mental health issues, petitioner has failed to make any substantial changes to her circumstances despite the DHHR's services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

Next, petitioner argues that the circuit court erred in failing to consider alternatives to the termination of her parental rights. According to petitioner, the court was required to give precedence to the dispositions listed in West Virginia Code § 49-4-604(c), and it should have

granted her disposition pursuant to West Virginia Code § 49-4-604(c)(5).[3] We find no error in the circuit court's termination of petitioner's parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(d).

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner continued to abuse controlled substances, failed to follow her medication regimen, and was noncompliant with services. Notably, petitioner does not dispute that she missed or failed several drug screens and failed to follow her medication regime and, instead, she argues that she could have been granted a less-restrictive disposition to resolve these issues. Specifically, petitioner argues that if she had been granted a less-restrictive disposition than the termination of her parental rights, she would have complied with services and resolved her issues of drug abuse. Yet the record below establishes that petitioner was noncompliant with the DHHR and failed to fully participate in services during the proceedings that could have remedied these issues. Ultimately, petitioner's assertion that she could remedy her issues with more time ignores the fact that she failed to stay drug free, fully participate with service providers, or complete drug screens sufficiently to justify the return of the child to her care.

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative than the termination of her parental rights, given that we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[3]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because she shared a bond with the child despite his young age. We find petitioner's argument unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in the child's best interests to grant visitation. Although petitioner may care for the child, there is no evidence that she developed a close bond with him given that he was less than one month old when he was removed from petitioner's care. Indeed, "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

6